1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

John White, Esq.                                    E-filed July 12, 2013
NV Bar Number 1741
WHITE LAW CHARTERED
335 West First St.
Reno, NV, 89503
775-322-8000
775-322-1228 (Fax)
john@whitelawchartered.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

IN RE:

PATRICK and PATRICIA
McCAULEY,

                    Debtors

BK-N-13-50194-btb
CHAPTER 12

JULY 12 DECLARATION OF
PATRICK McCAULEY IN SUPPORT
OF DEBTORS' OBJECTION TO THE
CLAIM OF MILTON M.
DAMBACHER, TRUSTEE OF THE
DAMBACHER FAMILY TRUST
DATED 4-29-87

Hearing Date: Sept. 24, 2013
Hearing Time: 2:00 p.m.

I, Patrick McCauley, one of the Debtors in this case, declare, under pain and penalty of perjury, as follows:

1. In approximately 1991, my wife and I rented Claimant's farm, near Merced California, sometimes called the Bellevue farm. The farm had been in permanent pasture (not farmed) since approximately 1973. The farm had 320 acres, of which 240 was irrigated. It also had a farmhouse, a corral, a brood house and other miscellaneous improvements. The farm was subject to flooding every 10 years or so, had poor drainage in non-flood years and was in great need of general repair. When Debtors took it over some 20 acres was a swamp.

2. In 2004, Claimant and I formalized a lease whereby we would pay $1250 per month for 300 acres, $800 month for the farmhouse, utility buildings and equipment parking, and $416 per month for the corrals and brooder house, being a

1

total rent of $2,466.67 per month. See Exhibit 1 hereto, which exhibit, though not signed, is in Milton Dambacher's handwriting. We paid that rent ($2,466.67 per month) from March 7, 2007 through October, 2008.

3. By 2007, we had become indebted to claimant in the amount of approximately $157,261.90, all, or essentially all of which constituted back rent and interest thereon. On March 7, 2007 (*Dambacher v McCauley*, CV 52556, Superior Court of California) default judgment was entered against us in favor of Claimant in that amount. We continued to rent the farm after the judgment was entered. We vacated the 300 acres in October, 2008, the farmhouse in January, 2009 and by July of 2009 we had removed all of our equipment.

4. Before and after the judgment, we had an agreement with Claimant that allowed us to pay the back rent/judgment by doing work, primarily excavation work, on the farm. The terms of that agreement, in effect after March 7, 2007 were based upon our pre-judgment 9/16/05 agreement, a copy of which is attached hereto as Exhibit 2.

5. We began work on this project promptly following entry of the March 7, 2007 judgment.

6. Oral amendments and changes to this agreement were regularly made as the work progressed. Such changes included:

   (a) New PG&E 200 amp electrical service on the house.

   (b) Install new lights and some wiring in the house.

   (c) Redo the bathroom floor and bathroom.

   (d) Diesel fuel went from $2.00 to $3.84

7. In addition to the work, we paid rent current from the judgment date through the time we left the farm in October, 2008 ($52,000 in checks).

2

8. That we never accepted Gary Dambacher's October increase in rent, from $2,466.67 per month to $5,500 per month and instead of doing so, vacated the farm in October, 2008. We left on the premises valuable plumbing and other personalty which more than covered any rent due for the farmhouse through January, 2009 ($800 per month for 3 months) and storing the equipment through July, 2009 ($416 per month for 8 months).

9. A schedule showing payments made is attached hereto as Exhibit 3 (Balance of Judgment). This schedule accurately shows all work done and payments made on the judgment, and correctly shows that the unpaid balance on the judgment is now $39,161.30.

10. That I am familiar with the additional excavation work done by AG Works, Ltd after we left. That the excavation work which we did for Milton Dambacher in 2007 and 2008 was to cause the water to drain to the farthest corner of the ranch to the Southwest and Southeast. That the AG Works excavation work was not to "correct" what we did but rather to change the slope so the water would drain back in to the farm to accomodate the desires of the new lessee. For Claimant to attempt to charge us the $73,432.50 he apparently paid AG Works because he changed his mind concerning the drainage plan is unconscionable.

11. The fencing, now complained of by the new partnership in control of Claimant, had been necessarily removed with Milton Dambacher's knowledge and consent, to enable excavation to take place. We were not obligated to replace it and in fact, since we left, much of the remaining fencing has been removed. Fencing was important when the farm was pasture land, but is in the way of the present crop-farming operation.

12. The money Claimant alleges to have been spent on corrals after we left was not to correct anything we had done to the corrals, which were in good condition when

3

we left the farmhouse in January of 2009. The corrals were still intact when we returned for our equipment in July, 2009.

13. The panels which Claimant refers to as "Powder River Panels" were not Powder River Panels.  They were made by another company in Liberty Kentucky and were of an inferior grade. These panels (16') cost about $77, while Powder River Panels cost over $200. We had delivered some of them to Dambacher's daughter in Sonora before we left and we left the rest on the Merced farm. There were approximately 60 of these panels at the farm when we moved out of the farmhouse in January, 2009.  They were still there when we returned for our remaining equipment in July of 2009.

14. That our work following the judgment took great time and expense, both in labor and equipment. It greatly improved the Merced ranch.

Dated this 12th day of July, 2013

/s/ Patrick McCauley
Patrick McCauley

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Index of Exhibits**

| Exhibit No. | Description | Number of pages |
|---|---|---|
| 1 | 2004 Rent Agreement | 2 |
| 2 | 2005 Projects Agreement | 1 |
| 3 | Balance of Judgment | 2 |